## 66511. SHALOM FARMS, INC. et al. v. COLUMBUS BANK & TRUST COMPANY.

DEEN, Presiding Judge.

Appellant Jim Weatherford, sole owner of appellant Shalom Farms, Inc. (Shalom), opened a checking account in April 1980 with appellee Columbus Bank and Trust Co. (CB&T) and signed a standard deposit agreement containing a clause giving the bank a security interest in the account, which was in Shalom's name. On March 31, 1981, appellant executed a promissory note to CB&T for a principal amount of $26,754.50, with monthly interest payments to be made beginning May 1, 1981, and the principal balance to be due October 1, 1981. The note gave appellee a security interest in, *inter alia,* "any and all balances, credits, deposits, accounts, items and monies of Borrower now or hereafter with the Holder." Appellant contends that at some unspecified time prior to August 20, 1981, a Mr. Branch, CB&T vice-president, had agreed to review the note monthly and, if appellants were unable to make the interest payments on the due dates, to extend the time therefor. Appellee bank denies that such an arrangement was contemplated or made. As of the date of the filing of this appeal, appellant had made no payment of either principal or interest.

On August 17, 1981, Mr. Branch of CB&T attempted to reach appellant by telephone to inform him that, no payments of any kind having been made, the bank was prepared to declare the note in default unless appellant could give adequate assurance that same day as to his plans for payment. At the end of the business day, his calls unreturned, Branch declared a default, accelerated the unpaid balance in accordance with the note's terms, declared a setoff against appellant's checking account, and ordered a hold placed on the account. The next day Branch made further unsuccessful attempts to reach Weatherford and approved a memorandum debiting Shalom's account in the amount of the existing balance, $16,072.89. On August 20 Branch wrote to Weatherford informing him of the setoff; on the same day Weatherford was refused payment on two checks written on

the account and subsequently went to Branch's office, accompanied by James Weatherford, Jr. According to the affidavits of father and son, Branch agreed at that time to reinstate the note, provided that another Columbus bank, National Bank and Trust Co. (NB&T), to which appellant was also indebted, would agree not to foreclose on the note it held. Appellant and his son testified by affidavit that they went immediately from Branch's office to NB&T and that a Mr. Meyers, a NB&T vice-president, telephoned Branch in their presence and stated that NB&T did not intend to foreclose. Appellee denies that these conversations occurred.

In December 1981, two months after appellant's note to appellee was due, CB&T informed appellant by registered mail of its intent to enforce the provisions of the note, and in February 1982 CB&T filed an action against appellant seeking payment of the principal balance of $10,681.61 (the amount remaining after the setoff) plus interest and attorney fees. Appellant counterclaimed, demanding a jury trial and seeking dismissal of CB&T's complaint; $16,072.89 in actual damages; $75,000 in consequential damages representing loss of credit and business; and $100,000 in punitive damages. Following completion of discovery procedures, CB&T moved for summary judgment as to both the complaint and the counterclaim, and the Muscogee Superior Court granted the motion. Appellant assigns as error the court's award of summary judgment, contending that there remained in the case genuine issues of material fact regarding the default, the existence of a quasi new agreement between appellant and CB&T, the adequacy of notice to appellant that CB&T planned to accelerate the note, and appellee's basis for dishonoring appellant's checks on August 20, 1982, and thereafter. *Held:*

1. The trial court did not err in granting summary judgment to appellee on its complaint. It is undisputed that appellant was indebted to appellee in the amount claimed and that on October 1, 1981, the date of the promissory note's maturity, neither the principal balance nor the interest due had been paid. Thus there existed no factual issue as to appellee's right to recover under the terms of the promissory note. Moreover, even had appellant presented evidence of a claimed quasi new agreement regarding interest payments, this would have had no effect on the terms of the original contract with regard to payment of the principal sum. While mutual departure from the terms of a contract, as in a quasi new agreement, mandates notice of the intention of one of the parties to return to the original terms before those terms can be enforced, OCGA § 13-4-4 (Code Ann. § 20-116), it is only the particular terms encompassed in the quasi new agreement that are affected thereby, and the other terms of the original contract remain enforceable as

written. *State Mut. Ins. Co. v. Strickland,* 218 Ga. 94 (126 SE2d 683) (1962); *Newby v. Bank of Pinehurst,* 159 Ga. App. 890, 891 (285 SE2d 605) (1981). Because the purported quasi new agreement, if any, pertained only to the interest payments and not to the principal sum, the original terms regarding payment of the principal remained in force, and no issue of fact existed in this respect at the time of trial.

2. With regard to appellant's counterclaim, however, there appear to be genuine issues of material fact. If indeed there existed a quasi new agreement between the parties with respect to the interest payments, then the waiver of notice provisions of the controlling documents, the deposit agreement and the promissory note, may have been insufficient as a matter of law to fulfill the notice requirement of OCGA § 13-4-4 (Code Ann. § 20-116). This statute, formerly Code Ann. § 20-116, reads as follows: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice."[1] If only one party disregards the contract's terms but the other party has not concurred in such changes, then the non-concurring party is entitled to rely on the exact terms, *Continental Cas. Co. v. Union Camp Corp.,* 230 Ga. 8 (195 SE2d 417) (1973), and there is no quasi new agreement as a matter of law.

To establish the existence of a quasi new agreement would require of appellant a showing of mutual rather than merely unilateral intention to vary the terms of the original contract. *Continental Cas. Co. v. Union Camp Corp.,* supra; *Southern Feed Stores v. Sanders,* 193 Ga. 884 (20 SE2d 413) (1942); *Crawford v. First Nat. Bank,* 137 Ga. App. 294 (223 SE2d 488) (1976). Such a showing may be implied from the parties' conduct, and this court has held that evidence of a creditor's acceptance of repeated late and irregular payments creates a factual dispute as to the creation of a quasi new agreement. *Vaughan v. Wrenn Bros.,* 163 Ga. App. 383, 384 (294 SE2d 609) (1982). See also *Smith v. Gen. Finance Corp.,* 243 Ga. 500 (255 SE2d 14) (1979). Where, as in the instant case, it is non-payment rather than late or irregular payment which is involved, "the evidence must establish a pattern or course of conduct evidencing an agreement or waiver of the provisions in the original contract relating to non-receipt of monthly payments." *Newby v. Bank of Pinehurst,*

---

[1] The final sentence of Code Ann. § 20-116 differs from the current version: "Until such notice, the departure is a quasi new agreement."

supra. See also *Morrison v. Roberts,* 195 Ga. 45 (23 SE2d 164) (1942). Determination of whether the parties' conduct is such as to create or imply the existence of a quasi new agreement is ordinarily for the jury. *Prothro v. Walker,* 202 Ga. 71 (42 SE2d 114) (1947); *Crawford v. First Nat. Bank,* supra.

Other than the affidavits of appellant and his son (which may fairly be regarded as self-serving) and the bank's apparent inaction regarding the omitted May, June, and July payments, appellant presented no evidence in corroboration either of any quasi new agreement or of the purported conversations pertaining to the NB&T note. Nevertheless, the conflicting allegations in the parties' competing affidavits may be said to constitute such issues of material fact as would require jury resolution. We therefore remand the case to the Muscogee County Superior Court for exploration and resolution of the issues presented by appellant's counterclaim.

*Judgment affirmed in part and reversed in part. Banke, J., concurs. Carley, J., concurs specially.*

DECIDED NOVEMBER 17, 1983 —
REHEARING DENIED NOVEMBER 30, 1983 — ■■■■■■■■■

*J. Philip Day,* for appellants.
*John T. Laney III,* for appellee.

CARLEY, Judge, concurring specially.

I concur in the judgment and I agree with Division 1 of the majority opinion which deals with the main action. With regard to appellant's counterclaim which is discussed in Division 2 of the majority opinion, I agree that there are factual issues which preclude summary judgment. However, Division 2 of the majority opinion deals entirely with the existence of genuine issues of material fact with regard to a quasi-new agreement vis-a-vis the promissory note. It is my opinion that there is another issue in the case, which if resolved in favor of appellee, would demand judgment against appellant as to the counterclaim *even* if a quasi-new agreement existed with regard to the note.

I refer to the Deposit Agreement executed by appellant in connection with the creation of the bank account, the setoff from which is alleged to have been wrongful. Paragraph 4 of the Deposit Agreement reads as follows: "To secure any and all indebtedness and liability of Depositor to Bank, however and whenever incurred or evidenced, whether direct or indirect, absolute or contingent, *due or to become due,* Depositor hereby transfers and conveys all balances,

credits, deposits, monies and items now or hereafter in this account and Bank is authorized at any time to charge such indebtedness or liability against this account, *whether or not the same is then due,* and the Bank shall not be liable for dishonoring items where the making of such a charge or charges results in there being insufficient funds in Depositor's account to honor such items." (Emphasis supplied.) It is clear that this Deposit Agreement gave appellee the right to set off funds in the account to pay any indebtedness owed to it by appellant whether the same was due or not. This type of clause has been held to be enforceable. *Greene v. C. & S. Bank of Cobb County,* 134 Ga. App. 73 (213 SE2d 175) (1975). Therefore, if, in fact, appellee set off funds from the account to apply to the indebtedness before the allegedly wrongfully dishonored checks were presented, the appellee is entitled to judgment. This would be true even if there existed a quasi-new agreement with regard to payments due under the promissory note.

However, I am constrained to agree that the case must be reversed and remanded for trial because there appears to be some conflict in the evidence as to the date on which the account was debited by appellee. Appellee contends that the setoff occurred on August 18, 1981, and the first allegedly wrongfully dishonored check was presented on that same date. However, the appellant relies upon the fact that the bank's ledger sheet shows that the "setoff" didn't occur until August 20, 1981. Therefore, a question of fact exists as to the date of setoff. If the appellee set off the funds before the presentation of the checks, there was no *wrongful* dishonor because at the time of presentment, there was a zero balance in the account. If, however, the setoff had not occurred prior to the presentment of the checks, there would be evidence supporting appellant's position that the dishonor was without authority.