A89A1573. HILL v. FEDERAL EMPLOYEES CREDIT UNION.
(386 SE2d 874)

SOGNIER, Judge.

The Federal Employees Credit Union (FECU) brought suit against Sadie C. Hill to recover a deficiency balance resulting when Hill defaulted on an automobile loan and FECU repossessed and sold her car. Hill answered and counterclaimed, and the parties filed cross-motions for summary judgment. The trial court granted FECU's motion for summary judgment and denied that of Hill, and Hill brings this appeal.

The record reveals that in April 1985, appellant executed an "Open-End Credit Plan Agreement" (the Agreement) with appellee. Shortly thereafter, appellant applied for and received an initial loan of $400, secured by her savings account. This loan was paid off in January 1986. On July 2, 1986, appellant obtained check number 210392, in the amount of $13,303, issued to appellant and Toresco's Autoland after approval of a loan for the purchase of a 1987 Chrysler Fifth Avenue. That check was endorsed by both payees, and the proceeds used to purchase the automobile. Both before and after the date of the car loan, appellant applied for and received various other (mostly small) loans pursuant to the same Agreement.

In August 1987, after a work injury, appellant stopped making payment to appellee. On October 29, 1987, when appellant was over two months behind in her biweekly payments, and the balance remaining on the debt was almost $16,000, appellee repossessed the automobile. Four days later, appellee sent to appellant by certified mail, return receipt requested, its customary "UCC 10 day letter," which was returned on November 23, 1987, marked "unclaimed" indicating attempted delivery twice to appellant. Appellee then prepared the vehicle for private sale, advertised it, and received written bids. On March 14, 1988, appellee sold the vehicle to the highest bidder for $11,700 and applied the proceeds to the balance owed. After doing so, there remained a deficiency balance in the principal amount of $4,107.84, reflecting a balance of $3,161.84 on the car loan and $946

on cross-collateralized line of credit loans under the Agreement. After appellant refused demand for this sum, appellee brought this action.

1. Appellant contends the trial court erred by granting summary judgment in favor of appellee when the record fails to show appellee had a security interest in the automobile it repossessed. This enumeration is without merit. The Agreement signed by appellant incorporates a security agreement which gives appellee a security interest in a vehicle for whose purchase a loan is made, and also provides that such collateral "also secures any other debt obligation that I have or subsequently incur with you." In addition, the check issued for the purchase of the car contained a limited endorsement warranty, incorporating the Agreement by reference and indicating that by endorsing the check appellant acknowledged receipt of the proceeds in accordance with the Agreement. Appellant's execution of the Agreement and subsequent endorsement of the check gave appellee a security interest in the purchased vehicle, which was then perfected by the issuance of a certificate of title listing appellee as first lienholder. See OCGA §§ 11-9-302 (3) (b); 40-3-53.

2. Appellant alleges the trial court erred by granting summary judgment to appellee because questions of fact remain with regard to four issues.

(a) With regard to whether the costs of servicing and preparing the car for sale were authorized, appellant's contentions are unfounded because these incidental expenses were provided for in the Agreement and are further specifically allowed by OCGA § 11-9-504 (1) (a).

(b) Appellant also claims issues of fact remain as to whether appellee complied with the requirements of OCGA § 10-1-36 because she never received notice. The record reveals that on the envelope containing the notice, the last number of appellant's correct street address had been deleted. However, in its motion for summary judgment, appellee proffered the affidavit of Henry Brannon, who averred that he was employed as a rural mail carrier by the U. S. Postal Service and was responsible for mail delivery to appellant's correct address during the period of time the notice was mailed. Brannon deposed that notwithstanding the typographical error and the fact that the address on the envelope does not exist, he recognized the name on the letter, realized where it should be delivered and, in fact, attempted delivery there twice by leaving a notice of attempt to deliver certified mail at appellant's correct address. Brannon also stated that because it was a certified letter, pursuant to post office procedures it was returned to the sender after two claim notices. This information was verified in the affidavit of Donna Willoghby, another postal service employee at Brannon's branch.

This court has held that "[t]here is no requirement in OCGA §

10-1-36 that the debtor actually receive notice," *Calcote v. C & S Nat. Bank*, 179 Ga. App. 132, 133 (345 SE2d 616) (1986), and a debtor may not evade notification by refusing to accept certified mail. Appellee has shown, without rebuttal by appellant, that two attempts were made to deliver the notice to the correct address and appellant refused delivery. Accordingly, *Calcote* applies, and the requirements of OCGA § 10-1-36 have been met. Although the court in *Calcote* went on to discuss whether compliance in that manner with OCGA § 10-1-36 is also a sufficient showing of compliance with the "cumulative and additional 'reasonable notification' provision of OCGA § 11-9-504 (3)," id., that issue is not enumerated or argued by appellant, and therefore we need not address it. Accordingly, we find no merit in this enumeration.

(c) Appellant contends an issue of fact exists as to whether she was actually in default at the time of repossession. Appellant averred in her affidavit that Chris Maner, appellee's employee, had verbally agreed to extend the payment deadline and the repossession was accomplished prior to the extended deadline. In their affidavits, both Maner and Dorothy Freehery, appellee's collection manager, unequivocally denied that they extended the deadline.

As to the "quasi new agreement" appellant asserts was created by her conversation with Maner, OCGA § 13-4-4 provides that mutual departure from the terms of a contract mandates notice of the intention of one of the parties to return to the original terms before those terms may be enforced. In order to establish the existence of a quasi new agreement, a mutual rather than merely unilateral intention to vary the terms of the original contract must be shown. *Shalom Farms v. Columbus Bank &c. Co.*, 169 Ga. App. 145, 147 (2) (312 SE2d 138) (1983). Thus, in order to recover under this theory, appellant must show conduct evidencing an agreement or waiver by the appellee of the provisions in the original contract relating to non-receipt of bi-weekly payments. Here, the parties have proffered sharply conflicting evidence. It is ordinarily a jury question whether the parties' conduct creates or implies the existence of a quasi new agreement, id. at 148, and the conflicting allegations in the parties' competing affidavits regarding whether the deadline was ever extended were sufficient to create an issue of material fact as requires jury resolution. See id. Accordingly, we find the trial court erred by granting summary judgment to appellee on this issue.

(d) We agree with appellant as well that a question of fact exists concerning the value of the car. In support of its motion for summary judgment, appellee submitted the affidavit of Keith Campbell, the vice president and general manager of an automobile dealership, who detailed, inter alia, his background in the automobile industry, and his extensive experience in the purchase and sale of new and used

automobiles in private and repossession auctions. Campbell listed the various factors used as standard practice within the industry to value used automobiles, including the NADA book value; stated that he had had occasion to value the car in question in this action; and detailed his reasons for valuing the car in issue at between $9,030 and $9,630.

In opposition to appellee's motion, appellant submitted her own affidavit in which she opined that the retail value of the car was about $16,000 at the time of repossession. The affidavit sets forth that the opinion was based on shopping for the car for a number of months, during which time she sought the opinions of others knowledgeable of the value of Chrysler Fifth Avenues, including those engaged in the business of buying and selling such cars; her continuing to keep informed of the market conditions surrounding the car, including Chrysler's intention to discontinue the Fifth Avenue model, which appellant claimed had had a positive effect upon that model's maintenance of its value generally; and her knowledge that her car was in "mint condition" at the time of repossession.

It is not the function of this court to weigh the credibility of the evidence. We review only its sufficiency. *Work Clothes Outlet &c. v. M & S Purchasing*, 188 Ga. App. 179, 180-181 (1) (372 SE2d 509) (1988). Although appellee argues that appellant's affidavit was conclusory and therefore insufficient to rebut appellee's evidence regarding value, "[o]pinion evidence offered by a non-expert witness 'as to the value of an item, in order to have probative value, must be based upon a foundation that the witness has some knowledge, experience, or familiarity with the value of the property in question or similar property and [she] must give reasons for the value assessed and also must have had an opportunity for forming a correct opinion. (Cits.) . . .' [Cits.]" *Reeves v. Crawford*, 185 Ga. App. 518 (364 SE2d 895) (1988). Giving appellant as respondent the benefit of all reasonable doubts and all favorable inferences that can be drawn from the evidence, see generally *Meadows v. Phillips*, 188 Ga. App. 377, 378 (373 SE2d 27) (1988), we find that appellant's affidavit meets the requirements for lay opinion as to value, sufficiently rebutting the evidence offered by appellee as to value to create a genuine issue of material fact for resolution by a jury. Accordingly, the trial court erred by granting summary judgment in favor of appellee on this issue as well. See id.

3. The trial court denied appellant's motion for reconsideration made after the grant of summary judgment in favor of appellee. Appellant now maintains the trial court's ruling was error because genuine issues of material fact existed as to whether appellee breached the peace by repossessing the car at night and without appellant's knowledge and whether appellee committed larceny or trespass by taking and refusing to return appellant's personal property inside the car

when it was repossessed.

(a) It is well settled law that a secured party, through its agents, has a right to enter premises peacefully and at any time to obtain its property. See OCGA § 11-9-503. Absent agreement to the contrary, notice to the debtor is not required, *Fulton Nat. Bank v. Horn*, 239 Ga. 648 (238 SE2d 358) (1977), and the absence of the debtor's knowledge or consent does not constitute a breach of the peace unless abusive and insulting language which incites violence is used or some other violation of the public peace, order, or decorum occurs. See *Deavers v. Standridge*, 144 Ga. App. 673, 674-675 (1) (242 SE2d 331) (1978). The security agreement in issue here did not provide for notice to the debtor before repossession (although we note that appellee gave appellant written notice that it would repossess the collateral if she did not comply with her obligations), and thus the trial court did not abuse its discretion by failing to reconsider this issue.

(b) Appellant first introduced evidence on the larceny issue by attaching an affidavit to the motion for reconsideration. However, OCGA § 9-11-56 (c) provides only that the adverse party may serve opposing affidavits *prior to the hearing on the motion for summary judgment.* Thus, appellant's affidavit was untimely because it was filed and served *after* the hearing, after the order granting summary judgment to appellee, and after filing her motion for reconsideration. Further examination of the record shows that the "amended counterclaim," for which the affidavit was purported to be evidence, was a compulsory counterclaim as defined in OCGA § 9-11-13 (a) because it added an entirely new cause of action. This counterclaim was filed, however, more than five months after appellant filed her original answer and counterclaim. Appellant made no claim of excusable neglect, nor did she apply for leave of court to add an omitted counterclaim pursuant to OCGA § 9-11-13 (f). Since appellant did not follow proper procedure in amending her counterclaim, and her motion for reconsideration as to the larceny issue depended on this improper counterclaim, the trial court did not abuse its discretion by denying appellant's motion for reconsideration. See generally *White v. Fidelity Nat. Bank*, 188 Ga. App. 539, 540-541 (1) (373 SE2d 640) (1988).

4. In view of our determination in Division 2 that certain issues of fact remain, the trial court's denial of appellant's motion for summary judgment is affirmed.

5. Appellee's motion to dismiss the appeal and for penalties for frivolous appeal is denied.

*Judgment affirmed in part and reversed in part. Banke, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 6, 1989 —
REHEARINGS DENIED SEPTEMBER 26, 1989 — 

*Arthur F. Millard*, for appellant.
*Boyce, Thompson & O'Brien, Albert F. Nasuti, J. Patrick O'Brien*, for appellee.