**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 12, 2020**

# In the Court of Appeals of Georgia

A19A1648. HICKS v. GABOR et al.

GOBEIL, Judge.

Katherine Hicks appeals from several orders issued by the trial court in the instant interpleader action filed by Auto-Owners Insurance Company ("AOIC").She contends that the trial court erred in: (1) dismissing AOIC's complaint against her; (2) (a) dismissing her counterclaim against AOIC, and (b) awarding attorney fees and sanctions to AOIC against her; (3) denying her motions for attorney fees and sanctions against the other parties in the action; and (4) "in effect" denying her motion for partial summary judgment. For the reasons explained below, we reverse in part and affirm in part the trial court's orders.

AOIC is a corporation that, among other things, acts as a corporate surety issuing bonds to used motor vehicle dealerships. Pursuant to OCGA § 43-47-8, every

used car dealership in Georgia is required to acquire a bond of at least $35,000 in order to receive its license to do business. In 2012, AOIC issued a used motor vehicle dealers bond (the "Bond") to Automobiles, Holdings & Acquisitions, Inc. (the "Dealership"), a used car dealership located in Dekalb County. The Bond was in the amount of $35,000, and was "for the use and benefit of any purchasers of any used motor vehicles and their vendees or successors in title" as required by OCGA § 43-47-8. The Bond indemnifies for "all loss, damages, and expenses that may be sustained by any purchasers of any used motor vehicle and their vendees or successors in title by reason of any fraudulent misrepresentation as to liens against or titles to any used motor vehicle[.]"

In 2017, AOIC paid $8,012 to Auction Insurance Agency to settle a claim against the Bond. As a result, the remaining value of the Bond was $26,988. After receiving multiple additional claims against the Bond, AOIC sent written notices via certified mail to claimants Hicks, William Gabor, and Paul Williams invoking OCGA § 10-7-24,[1] and notifying them that they had only three months to file a lawsuit

---

[1] OCGA § 10-7-24 allows a corporate surety to send "notice in writing" to creditors informing them that they have three months "to proceed to collect the debt from the principal[,]" and if the creditor fails to commence an action within three months, the surety shall be discharged from its obligation.

against the Dealership to preserve their right to recover funds from the Bond. The last of these notices was mailed on December 18, 2017.

On March 23, 2018, AOIC filed the instant Complaint for Interpleader and to Discharge Surety and Cancel the Bond. In the Complaint, AOIC stated that the claims against the Bond exceeded its remaining balance, and asked the trial court to determine how to distribute the funds. The trial court ordered AOIC to deposit the remaining $26,988 of the Bond into the registry of the court.

1. On appeal, Hicks's first set of claims relate to the trial court's orders dismissing her from the action and/or dismissing AOIC's interpleader claim against her. As discussed more fully below, because we agree with Hicks that the trial court treated the motions to dismiss as motions for summary judgment, we conduct a de novo review, construing the record in the light most favorable to Hicks as the non-movant. See *Howerton v. Harbin Clinic, LLC*, 333 Ga. App. 191, 191-192 (776 SE2d 288) (2015).

Williams was the first claimant to answer the Complaint, and he simultaneously filed a motion for partial dismissal, asserting that Hicks should be dismissed from the action, as she had failed to file an action against the Dealership within three months of AOIC's notice, and thus her claim against the Bond had been discharged. He asked

3

the court to take judicial notice of Dekalb County court records, which revealed that Hicks had not commenced an action against the Dealership as required by OCGA § 10-7-24, as outlined in AOIC's notice. Accordingly, Williams argued that AOIC's complaint did not state a valid action against Hicks. Gabor also answered the complaint, and filed a motion to dismiss Hicks from the action, raising essentially the same argument as Williams regarding Hicks's failure to preserve her right to the Bond proceeds by failing to file a timely lawsuit against the Dealership.

Hicks answered AOIC's Complaint. Regarding her failure to file a lawsuit against the Dealership, she did not contest that AOIC sent the notice via certified mail to her correct address, but she stated that she never received it. She attached a copy of the certified mail sent by AOIC with a postal stamp stating "return to sender[,] attempted - not known[,] unable to forward[.]" She also stated that she did not receive a copy of the notice via e-mail, even though the notice stated that it was being sent via certified mail and e-mail. Accordingly, she argued that OCGA § 10-7-24 did not apply to her, as she did not receive actual notice of the three-month deadline to file an action against the Dealership. Hicks repeated these arguments in responding to Williams's and Gabor's respective motions to dismiss.

4

The parties proceeded to a hearing, after which the court issued several orders resolving the pending motions. First, the court granted Gabor's motion to dismiss Hicks from the action. The court found that AOIC sent its notice to Hicks's correct address via certified mail, but she "failed to retrieve the Hicks Notice, so such notice was returned to sender as undeliverable." The court also took judicial notice of court records and found that Hicks had failed to commence a lawsuit against the Dealership within three months after AOIC sent her the notice.

Regarding the sufficiency of the notice sent to Hicks, the court concluded that "OCGA § 10-7-24 does not require actual notice be provided to the Defendant. If that were the case, potential Claimants could simply avoid delivery of the certified mail notice until it was convenient for them to begin the three-month limitations period." The court then noted that a recipient's failure to accept certified mail is sufficient to show notice for many other Georgia statutes, and the Georgia Supreme Court has held that the intention of the legislature in drafting the statute, as reflected in the relevant text, is paramount. As a result, the court concluded that OCGA § 10-7-24 did not have an actual notice requirement as written. And inserting one into the statute would have unreasonable consequences not contemplated by the legislature, as a claimant could simply refuse to retrieve a properly mailed notice in order to avoid the

5

limitations period. Additionally, the court concluded that AOIC did not have an affirmative duty to ensure Hicks received its notice. Accordingly, the court found that, in order to preserve her right to proceeds from the Bond, Hicks was required to file suit against the Dealership within three months of December 18, 2017, which she did not do. Thus, AOIC's claim against Hicks, which assumed that she was eligible for Bond proceeds, was due to be dismissed.

In a parallel order filed on the same day, the court also granted Williams's motion for partial dismissal of AOIC's complaint for failure to state a claim against Hicks, based on generally the same reasoning. This appeal follows.

(a) First, Hicks contends that the trial court erred in considering Gabor's and Williams's motions to dismiss her from AOIC's interpleader action, as their motions were not based on typical dismissal grounds under OCGA § 9-11-12 (b) (6). However, this is an interpleader action. The relevant interpleader statute, OCGA § 23-3-90 (a), states:

> Whenever a person is possessed of property or funds or owes a debt or duty, to which more than one person lays claim of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead.

6

An interpleader action consists of two phases. First, it must be determined whether the complainant had a right to interplead, and, second the interpleading defendants are required to litigate matters in dispute between themselves. *Smith v. Folsom*, 190 Ga. 460, 473-474 (8) (9 SE2d 824) (1940). During this second stage, "each defendant then occupies the position of a plaintiff as against the others, and should state his claim plainly, clearly, and distinctly, and as far as he can, take issue with the claims of others." *Whatley v. Alto Corp.*, 211 Ga. 718, 724 (2) (88 SE2d 398) (1955). Accordingly, after AOIC filed its interpleader action, named the parties who potentially had claims against the Bond, and deposited the funds into the court's registry, Hicks, Gabor, and Williams were required to litigate against each other, and were free to take issue with each other's claims to the Bond proceeds. Thus, we find no error in the trial court's considering these motions to dismiss filed by Williams and Gabor against their codefendant in the interpleader action, Hicks.

(b) Next, Hicks argues that the trial court's dismissal orders were replete with facts outside of the pleadings and thus were not proper dismissal orders. We agree that the trial court converted the motions to dismiss into motions for summary judgment by considering matters outside the pleadings, but find no reversible error.

7

In deciding the motions to dismiss, the trial court relied on evidence other than the pleadings, including several exhibits attached to the Complaint and the court's judicial notice of its own docket. Thus, the trial court converted the motions to dismiss into motions for summary judgment. See *Cox Enterprises, Inc. v. Nix*, 273 Ga. 152, 153 (538 SE2d 449) (2000) (if, in deciding a motion to dismiss for failure to state a claim, a trial court considers evidence other than what is contained in the pleadings, the motion is converted into a motion for summary judgment).

As a general rule, where the trial court elects to treat a motion to dismiss as a motion for summary judgment, that court "has the burden of informing the party opposing the motion that the court will consider matters outside the pleadings and that, if the opposing party so desires, the party has no less than 30 days to submit evidence in response to the motion for summary judgment." *Davis v. Phoebe Putney Health Systems, Inc.*, 280 Ga. App. 505, 507 (2) (634 SE2d 452) (2006) (citation and punctuation omitted). The party opposing the motion, however, "may waive the right to the 30-day notice by acquiescing in the movant's submission of evidence in support of the motion to dismiss." *Morrell v. Wellstar Health Systems, Inc.*, 280 Ga. App. 1, 2 (1) (633 SE2d 68) (2006). See also *Cox Enterprises, Inc.*, 273 Ga. at 153-154. Such a waiver occurs where the opposing party also chooses to rely on evidence

8

outside the pleadings to support its position. See *Davis*, 280 Ga. App. at 507-508 (2). Under those circumstances, "[a]ll the parties, in effect, treated the motion to dismiss as being converted to a motion for summary judgment, and no party was denied an opportunity to respond to evidence submitted." *Morrell*, 280 Ga. App. at 2 (1) (citations omitted).

Here, the record shows that Hicks, like the other parties, relied on evidence outside the pleadings throughout the litigation. Specifically, Hicks attached her own affidavit to her answer, as well as correspondence between herself and AOIC. She further relied on these exhibits in responding to Gabor's and Williams's motions to dismiss. .

Given Hicks's reliance on extrinsic evidence in opposing the motions at issue, "there is no indication [that Hicks suffered] prejudice due to the trial court's failure to give notice" that the motions were being treated as ones for summary judgment. *Cox Enterprises, Inc.*, 273 Ga. at 154 (citation and punctuation omitted). Accordingly, the trial court did not commit reversible error in considering matters outside of the pleadings. Id. See also *Davis*, 280 Ga. App. at 507-508 (2); *Morrell*, 280 Ga. App. at 2 (1).

(c) Having determined that the trial court converted the motions to dismiss into motions for summary judgment, we now consider whether such motions for summary judgment were properly granted. Because there are disputed issues of material fact concerning Hicks's notice under OCGA § 10-7-24, we reverse the grant of summary judgment.

Constitutional due process of law under both the Georgia and the Unites States Constitutions "includes notice and a hearing as a matter of right where one's property interests are involved." *Sikes v. Pierce*, 212 Ga. 567, 568 (2) (94 SE2d 427) (1956). Our Supreme Court has explained that notice can be either express, constructive, or implied. *Hamilton v. Edwards*, 245 Ga. 810, 811 (267 SE2d 246) (1980). Express notice embraces "that which is communicated by direct information." Id.. "Constructive notice is information or knowledge of a fact imputed by law because the fact could have been discovered by proper diligence and the situation was such as to cast upon a person the duty to inquire into it." Id. at 811-812. Finally, "[i]mplied notice is that notice which is inferred or imputed to a party by reason of [her] knowledge of facts or circumstances collateral to the main fact, of such a character as to put [her] upon inquiry, and which, if inquiry were followed up with due

10

diligence, would lead [her] directly to the knowledge of the main fact." Id. at 812 (citations omitted).

To determine what kind of notice is required under OCGA § 10-7-24, we begin with the language of the statute, which provides, in pertinent part:

> Any surety . . . , at any time after the debt on which he or she is liable becomes due, may give notice in writing to the creditor . . . , to proceed to collect the debt from the principal or any one of the several principals liable therefor; and, if the creditor or holder refuses or fails to commence an action for the space of three months after such notice (the principal being within the jurisdiction of this state), the . . . surety giving the notice, as well as all subsequent endorsers and all cosureties, shall be discharged. To comply with the requirements of this Code section, the notice must specifically state that the creditor loses his or her rights to pursue the surety, guarantor, or endorser, as well as any cosureties, coguarantors, or endorsers, if the creditor does not commence legal action within three months after receiving the notice. Further, any notice which does not state the county in which the principal resides shall not be considered to be in compliance with the requirements of this Code section.

The question presented in this case is whether properly mailed, but undelivered, certified mail constitutes notice under OCGA § 10-7-24. We have, in other contexts, concluded that undelivered certified mail constitutes "notice" as a

matter of law. However, our holdings in those cases are not dispositive to the issue now before us. As an initial matter, unlike the statutes in these prior holdings, OCGA § 10-7-24 does not include specific language explaining how notice should be provided. See, e.g., *King v. State*, 179 Ga. App. 184, 184-185 (345 SE2d 902) (1986) (notice sent by certified mail that was marked delivered but was not conclusively received by the defendant was deemed sufficient, where statute at issue, OCGA § 40-5-58 (b) (1991), specifically provided that "notice given by certified mail with return receipt requested mailed to the person's last known address shall be prima-facie evidence that such person received the required notice") (citation and punctuation omitted); *Williams v. Runion*, 173 Ga. App. 54, 59-60 (5) (325 SE2d 441) (1984) (notice sent by registered mail that was returned to sender was sufficient, where statute at issue, OCGA § 51-12-14 (c), provides that interest begins to accumulate after written notice is "mail[ed] or deliver[ed]").

Nor is there evidence in the record regarding whether Hicks refused to accept or deliberately avoided the certified mail sent by AOIC. Cf. *Hill v. Fed. Employees Credit Union*, 193 Ga. App. 44, 45-46 (2) (b) (386 SE2d 874) (1989) (undelivered certified mail was sufficient notice where there was evidence in the record of multiple attempted deliveries to correct address and statute at issue, OCGA § 10-1-36, did not

12

have a requirement that the debtor receive notice); *Crenshaw v. Ga. Underwriting Assn.*, 202 Ga. App. 610, 611 (1) (414 SE2d 915) (1992) ("refusal to accept a letter delivered to the proper address with adequate postage is the equivalent of receipt of notice"). Finally, additional factors which have been held sufficient to impute knowledge of the litigation onto the addressee are also not present in the record on appeal in the instant case. See *Five Star Steel Contractors, Inc. v. Colonial Credit Union*, 208 Ga. App. 694, 696 (431 SE2d 712) (1993) (undelivered certified mail was sufficient to notify garnishee of default judgment against him, where he was personally served at the initiation of the lawsuit, and thus due process was not frustrated by later notice of post-judgment proceedings going unreceived); *Williams*, 173 Ga. App. at 59-60 (5) (once a litigant is "apprised of the pendancy of a lawsuit[,]" her constitutional right to notice is satisfied by service by mail) (citation omitted).

Turning to the specific evidence in the instant case, it is undisputed that Hicks did not have express notice in this case. We therefore must consider whether the evidence in the record was sufficiently conclusive to resolve the issue of whether Hicks had constructive or implied notice. At the hearing before the trial court, the parties disagreed over whether Hicks was required to retrieve her own certified mail, and they speculated as to whether she actively avoided receipt of the notice. In its

13

orders, the trial court failed to address these factual disputes, summarily stating that Hicks "failed to retrieve the Hicks Notice[.]" However, "[i]n ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion." *Sunamerica Financial v. 280 Peachtree Street, Inc.*, 202 Ga. App. 790, 793 (2) (a) (415 SE2d 677) (1992) (citation omitted; emphasis supplied), disapproved on other grounds by *Atlanta Market Center Mgmt., Co. v. McLane*, 269 Ga. 604 (503 SE2d 278) (1998). Here, there is an absence of evidence concerning Hicks's level of knowledge, her duty of inquiry or due diligence, and whether she exercised such required level of due diligence. Construing the evidence most favorably toward Hicks, as we must at this stage, the absence of such evidence left the trial court with a disputed fact regarding whether the notice was properly sent in compliance with OCGA § 10-7-24. See *Hamilton*, 245 Ga. at 811-812. Accordingly, the evidence as it stands in this record does not authorize the trial court's decision granting summary judgment, and we must reverse. See *Ga. Canoeing Assn. v. Henry*, 263 Ga. 77, 78-79 (428 SE2d 336) (1993) (where disputed issues of fact remain, summary judgment is inappropriate).

2. Hicks next contends that the trial court erred in granting AOIC's motion to strike or dismiss her counterclaim and awarding AOIC attorney fees and sanctions against her.

After answering the Complaint, Hicks filed a counterclaim against AOIC. She asserted that, by naming her as a defendant in the interpleader action, AOIC admitted that she had a valid claim against the Bond. Hicks therefore sought a declaratory judgment under OCGA § 9-4-1 for $35,000. Hicks also claimed that AOIC acted in bad faith by filing the interpleader action, rather than paying her claim against the Bond. She asserted that AOIC's attorneys made false statements in the Complaint, by stating that she agreed to waive service of process, when she had not.[2] Accordingly, she asked for her litigation expenses, including attorney fees under OCGA §§ 13-6-11 and 9-15-14.

---

[2] Throughout her answer and counterclaim, Hicks made personal accusations against some of the attorneys working for AOIC. For example, Hicks stated that one attorney left the firm representing AOIC shortly after working on this case, and "[e]vidently [the attorney's] mind was not on her tasks for [AOIC]." Hicks stated that another attorney had "no excuse for the bald misstatements in the Complaint." She further attached as exhibits to her answer personal LinkedIn profiles for two AOIC attorneys. In her prayer for relief, Hicks asked that specific attorneys be ordered to pay her sanctions for their conduct.

Hicks twice amended her counterclaim within the next month. In both filings, Hicks maintained her counterclaim to include a request for a declaratory judgment and a bad faith claim against AOIC, and asked for expenses of litigation and attorney fees pursuant to OCGA § 13-6-11, removing any mention of OCGA § 9-15-14.

After Hicks filed her second-amended counterclaim, on August 24, 2018, AOIC filed a motion to strike and/or dismiss Hicks's counterclaim as well as its own counter-motion for an award of attorney fees and sanctions against Hicks pursuant to OCGA § 9-15-14. AOIC argued that Hicks's claim for attorney fees was precluded by law, as there is a specific statute – OCGA § 10-70-30 (b)[3] – that provides the only remedy by which a claimant may sue a surety for bad faith and attorney fees, and Hicks proceeded under the wrong statute. Moreover, AOIC argued, Hicks had not met the pre-filing requirements of the surety bad faith statute, and thus could not replead her claim under the correct statute. AOIC further argued that Hicks's counterclaim was meritless because a pleading which seeks the recovery of attorney fees and costs

[3] OCGA § 10-7-30 (b) provides that, in the event that a corporate surety refuses to make a payment to an obligee in accordance with the terms of a suretyship, an obligee may file notice of default or demand for suretyship with the surety. If the surety does not remedy the default within 60 days, and upon a finding that the surety's refusal to pay was in bad faith, the surety shall be liable to pay the obligee, in addition to the loss, not more than 25 percent of the liability of the surety for the loss and all reasonable attorney fees for the prosecution of the case against the surety.

under OCGA § 13-6-11, without the assertion of a separate, substantive cause of action, cannot stand.

Finally, AOIC sought attorney fees of its own, pursuant to OCGA § 9-15-14 (a) and (b), arguing that Hicks's counterclaim was frivolous and without any justiciable issue of law or fact. AOIC described that it contacted Hicks in an effort to have her dismiss her frivolous counterclaim without requiring AOIC to expend further resources by filing a response with the court, but she refused. AOIC argued that Hicks unnecessarily expanded and escalated the litigation by continuing to pursue meritless claims.

Approximately one month after AOIC moved to strike or dismiss her counterclaim, on September 21, 2018, without leave of court, Hicks attempted to amend her counterclaim for the third time. Hicks's third amendment raised several claims: (1) a claim on the bond, (2) penalty and attorney fees under OCGA § 10-7-30, (3) fraud prior to the filing of the Complaint based on a lack of notice, (4) a declaratory judgment under OCGA § 9-4-1, (5) expenses of litigation, including reasonable attorney fees, pursuant to OCGA § 13-6-11, and (6) punitive damages. She also sought sanctions and attorney fees of her own.

After a hearing, the trial court granted AOIC's motion to strike and dismissed all of Hicks's counterclaims. First, the court found that Hicks's bad faith counterclaim failed to state a claim under which relief could be granted, as she did not proceed under OCGA § 10-7-30, the surety bad faith statute. The court found further that Hicks's OCGA § 13-6-11 claim failed because she did not assert any independent claims separate from the attorney fee claim. The court alternatively struck the claim, finding that, because Hicks had no legal support for the claim, it was immaterial, and it could have no possible bearing on the the subject matter of the litigation.

Next, the court considered Hicks's new claims raised in her third-amended counterclaim filing. The court found that it could not be considered an amendment of her previously filed counterclaim, as it did not incorporate the prior claims, but raised new claims. The court thus found that the filing of these previously omitted counterclaims could be made only through leave of court, which Hicks did not seek. Accordingly, the court dismissed these claims as well.

In a separate order, the trial court granted AOIC's counter-motion for an award of attorney fees and sanctions against Hicks. The trial court found that Hicks's twice-amended counterclaim against AOIC for bad faith lacked substantial justification, was interposed for delay, and unnecessarily expanded the litigation by improper conduct.

18

The court found further that Hicks asserted claims of law and fact that showed a complete absence of any justiciable issue that she could not reasonably have believed the court would have accepted. In making these findings, the court referred back to its previous order dismissing Hicks's claims, reiterating that Hicks's counterclaim for bad faith was destined to fail, as she ignored the statutory requirements to sue a surety for bad faith, and she failed to meet the basic pleading requirements under OCGA § 13-6-11. The court noted that AOIC twice informed Hicks of the deficiencies of her claim, and requested that she dismiss them, but Hicks only amended her claim without acknowledging its deficiencies. Regarding the attempted third amendment of Hicks's counterclaims, the court found that the newly raised counterclaims lacked substantial justification and unnecessarily expanded the litigation because they were filed without leave of court.

Finally, the court found that Hicks's "multiple accusations and disparaging remarks" made about opposing counsel had "no place in public documents" and "no merit to the allegations raised in [AOIC's] interpleader action." The court found these remarks "highly unprofessional" and "sanction worthy." Accordingly, the court found that Hicks took actions "interposed for harassment[.]" The court then reviewed AOIC's fee affidavit and awarded AOIC $6,448.20 in attorney fees under both

19

OCGA § 9-15-14 (a) and (b) associated with responding to Hicks's sanctionable conduct.

(a) On appeal, Hicks first argues that the trial court abused its discretion in striking her counterclaim, as AOIC's motion to strike was not timely filed.[4] She also argues that the trial court's order was contrary to law, as her counterclaim was relevant to the subject matter of the action.

Pretermitting whether the trial court correctly struck Hicks's counterclaim, we affirm the trial court's order, as it alternatively dismissed her counterclaim pursuant to OCGA § 9-11-12 (b) (6). "We review de novo a trial court's ruling on a motion to dismiss." *Pinnacle Benning LLC v. Clark Realty Capital, LLC*, 314 Ga. App. 609, 612 (724 SE2d 894) (2012) (citation and punctuation omitted).

A motion to dismiss made pursuant to OCGA § 9-11-12 (b) (6) will not be sustained unless:

(1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the

---

[4] OCGA § 9-11-12 (f) requires that a motion to strike be filed within 30 days of service of the contested pleading.

20

> claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

*Osprey Cove Real Estate, LLC v. Towerview Const., LLC*, 343 Ga. App. 436, 437 (1) (808 SE2d 425) (2017) (citation and punctuation omitted).

Here, Hicks's counterclaim asserted that AOIC engaged in bad faith by failing to pay her what she was owed from the Bond, and so she sought attorney fees pursuant to OCGA § 13-6-11. As previously stated, however, a surety's bad faith in failing to pay a debt under a suretyship is governed by OCGA § 10-7-30. Georgia courts have long held that "where the General Assembly has provided a specific procedure and a limited penalty for noncompliance with a specific enactment[,] . . . the specific procedure and limited penalty were intended by the General Assembly to be the exclusive procedure and penalty, and recovery under general penalty provisions will not be allowed." *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871 (2) (310 SE2d 513) (1984). Accordingly, if Hicks wished to raise a bad faith claim against AOIC for failing to meet its obligations under the suretyship, she was required to bring such claim pursuant to OCGA § 10-7-30, the specific procedure and penalty created by the General Assembly for such a claim. See *Ayers Enterprises, Ltd. v. Exterior Designing, Inc.*, 829 FSupp. 1330, 1332 (B) (N.D. Ga. 1993) (applying

21

Georgia law to affirm grant of summary judgment, where defendant's bad faith counterclaim against a surety was brought pursuant to OCGA § 13-6-11 rather than OCGA § 10-7-30).

Further, OCGA § 10-7-30 requires a notice of default or demand for payment to be sent to the surety 60 days before filing suit. Even if Hicks sought relief under the proper statute, her claim was due to be dismissed for failing to follow the proper procedure. See *Columbus Fire & Safety Equip. Co. v. Am. Druggist Ins. Co.*, 166 Ga. App. 509, 510 (1) (304 SE2d 471) (1983) (bad faith claim under OCGA § 10-7-30 was barred because plaintiff failed to wait 60 days after filing demand to file suit).

Additionally, Hicks's counterclaim also failed under OCGA § 13-6-11, as "[t]hese damages are available to a defendant only where the defendant has brought a counterclaim asserting a claim for relief wholly independent of any assertion as to plaintiff's bad faith, litigiousness, and/or harassment in bringing the underlying action." *Steele v. Russell*, 262 Ga. 651, 651 (2) (424 SE2d 272) (1993). In her original counterclaim and first two amendments, Hicks raised the bad faith claim alone, without any independent claim to support the grant of sanctions or fees.[5] Accordingly,

---

[5] Hicks's original and twice-amended counterclaim did raise a claim for a declaratory judgment pursuant to OCGA § 9-4-1. However, such claim was based on AOIC's failure to pay out her claim against the Bond, and instead filing the

22

Hicks's claim under OCGA § 13-6-11 failed to plead sufficient facts to state a claim, and we affirm the trial court's dismissal of Hicks's bad faith counterclaim for this reason as well.

Hicks's attempt to save her OCGA § 13-6-11 claim from dismissal – by attempting to amend her counterclaim for a third time to include additional, independent claims after AOIC moved to dismiss and without leave of court – was unavailing. "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment. OCGA § 9-11-13 (f). However, where a defendant seeks but does not receive permission before filing additional counterclaims, the trial court may in its discretion dismiss them. See *Douglas Asphalt Co. v. Martin Marietta Aggregates*, 339 Ga. App. 435, 438 (3) (793 SE2d 615) (2016) (trial court did not err in dismissing additional counterclaims based on new theories not originally pleaded); *EarthLink, Inc. v. Eaves*, 293 Ga. App. 75, 78-79 (4) (666

___

interpleader action. Accordingly, such claim was not "wholly independent" of the assertion as to AOIC's bad faith in "bringing the underlying action."*Steele*, 262 Ga. at 651 (2). See also *Brown v. Baker*, 197 Ga. App. 466, 467 (3) (398 SE2d 797) (1990) ("[i]t is well settled that the bad faith contemplated by OCGA § 13-6-11 is bad faith connected with the transaction and dealings out of which the cause of action arose, rather than bad faith in defending or resisting the claim after the cause of action has already arisen") (citation and punctuation omitted).

SE2d 420) (2008) (leave to amend counterclaims is within trial court's discretion).

Accordingly, we also affirm the trial court's dismissal of Hicks's third-amended counterclaim filing.

(b) Hicks next argues that the trial court erred in granting attorney fees to AOIC. She argues that her filings contained only substantive and verifiable claims and facts, and her conduct did not warrant sanctions.

OCGA § 9-15-14 (a) and (b) both allow a trial court to award attorney fees under certain circumstances.

> Pursuant to OCGA § 9-15-14 (a), the trial court shall award attorney fees when a party asserted a claim, defense or other position with such a complete absence of any justiciable issue of law or fact that the party could not reasonably have believed that the court would accept it. We affirm an award under subsection (a) if there is any evidence to support it. Pursuant to OCGA § 9-15-14 (b), the court may award attorney fees if a party brought or defended an action that lacked substantial justification or was interposed for delay or harassment, or if the court finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct. We review a subsection (b) fee award for abuse of discretion.

*Shoenthal v. Dekalb County Employees Retirement System Pension Bd.*, 343 Ga. App. 27, 30 (805 SE2d 650) (2017) (citation and punctuation omitted). Before awarding

24

attorney fees under OCGA § 9-15-14, "[t]he trial court must conduct a hearing on a motion for attorney fees and make findings of fact that specify the conduct upon which the award is made." *DeRossett Enterprises, Inc. v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728, 731 (4) (621 SE2d 755) (2005) (citation omitted).

For the reasons explained further above, supra Division 2 (a), we conclude that Hicks's counterclaim for bad faith had no factual merit and did not present a justiciable issue of law. See *Doster v. Bates*, 266 Ga. App. 194, 196 (1) (596 SE2d 699) (2004) (in reviewing an award of attorney fees under OCGA § 9-15-14 (a), we determine whether the claim or defense asserted below had some factual merit or presented a justiciable issue of law). Hicks's bad faith claim against AOIC as a corporate surety was not only brought under an inapplicable statute, namely OCGA § 13-6-11, but also failed to meet the basic pleading requirements under OCGA § 13-6-11.

Further, the trial court's order contained sufficient findings of fact and cited specific examples of the conduct authorizing the award. See *Cohen v. Rogers*, 341 Ga. App. 146, 152 (2) (b) (798 SE2d 701) (2017) ("To permit meaningful appellate review of an award of fees and expenses [under OCGA § 9-15-14], the trial court's order cannot be too vague and conclusory, such as where it fails to cite examples of

25

conduct that authorize the award.") (citation and punctuation omitted). The court related the award of fees to Hicks's sanctionable conduct, rather than simply awarding a lump-sum fee. See *Roylston v. Bank of America, N. A.*, 290 Ga. App. 556, 562-563 (2) (a) (660 SE2d 412) (2008) ("In cases involving OCGA § 9-15-14 (a) or (b), the trial court must limit the fees award to those fees incurred because of the sanctionable conduct. Lump sum attorney fees awards are not permitted in Georgia.") (citation and punctuation omitted). Accordingly, we affirm the trial court's award of attorney fees to AOIC.

3. Hicks also contends that the trial court abused its discretion in denying her motion under OCGA § 9-15-14 for attorney fees and sanctions against the other parties. Hicks sought attorney fees and sanctions against the other parties in multiple filings throughout the litigation, The trial court denied her motion for attorney fees against AOIC, and did not address her requests for attorney fees against Williams or Gabor.

However, as we have determined that Gabor and Williams were within their rights as interpleader defendants to challenge Hicks's claim to the Bond proceeds, and that AOIC was entitled to attorney fees for Hicks's frivolous counterclaim, we find that the trial court did not err in denying Hicks attorney fees in this case.

26

*Rescigno v. Vesali*, 306 Ga. App. 610, 615-616 (4) (703 SE2d 65) (2010) (we review the denial of attorney fees under OCGA § 9-15-14 (a) if there is any evidence to support the trial court's order, and we review the denial of attorney fees under OCGA § 9-15-14 (b) for an abuse of discretion). Accordingly, we affirm the trial court's order.

4. Finally, Hicks contends that the trial court erred by "in effect" denying her motion for partial summary judgment on her counterclaim. In this motion, Hicks argued that because the language of the Bond was ambiguous, it could be construed as requiring a $35,000 payment to each claimant, as opposed to a total pool of $35,000 to split between all claimants. However, because the trial court never reached this issue in any of its orders, we do not reach it in the first instance here. *Williamson v. Strickland & Smith, Inc.*, 296 Ga. App. 1, 6 (7) (673 SE2d 858) (2009) ("[W]here the trial court has not ruled on an issue, we will not address it.") (citation and punctuation omitted).

*Judgment affirmed in part; reversed in part. Dillard, P. J., and Hodges, J., concur.*