## A08A1758. WILLIAMSON et al. v. STRICKLAND & SMITH, INC.

(673 SE2d 858)

ELLINGTON, Judge.

This is the third appearance of this case before this Court. In *Williamson v. Strickland & Smith, Inc.*, 263 Ga. App. 431 (587 SE2d 876) (2003), this Court, as pertinent here, ruled that Strickland & Smith (S & S) had failed to prove the expenses it would have incurred on its claim for lost profits had it been able to fulfill a buyer's order with onions from Williamson. S & S contended it could not fill this order due to Williamson's breach of his contract with S & S. Upon remand, instead of conducting a new trial on S & S's lost profits claim, the trial court entered judgment in favor of Billy Williamson, Williamson Produce, Inc., and Classic Vidalia, Inc. on this claim. In *Strickland & Smith, Inc. v. Williamson*, 281 Ga. App. 784 (637 SE2d 170) (2006), this Court reversed the judgment, concluding that, because "Williamson did not appeal the denial of a directed verdict or j.n.o.v., but rather the denial of a motion for new trial, the only remedy available to him is a new trial, at which S & S will have an opportunity to present additional or different evidence."[1] (Footnote omitted.) In the present appeal, Williamson appeals from the judgment entered by the trial court following a bench trial awarding S & S

---

[1] Although Williamson cites to the transcript of the first trial in arguing his current appeal, except as that transcript was used for impeachment purposes in the second trial, its content is not relevant to this appeal. "Where a new trial has been granted, the case stands ready for trial as if there had been no trial. The effect of the grant of a new trial by [an appellate] court is to require the case to be heard de novo unless specific direction be given in regard thereto. [OCGA § 5-5-48]." (Citations and punctuation omitted.) *Reagan v. Reagan*, 221 Ga. 173, 174 (143 SE2d 736) (1965).

$76,040 plus interest at seven percent per annum from June 12, 1998.

A trial court's factual findings in a nonjury trial may not be set aside unless clearly erroneous. OCGA § 9-11-52 (a); *Sadler v. First Nat. Bank*, 267 Ga. 122, 123 (2) (475 SE2d 643) (1996). "Furthermore, since the clearly erroneous test is the same as the any evidence rule, we will not disturb factfindings of the trial court if there is any evidence to sustain them." (Citations and punctuation omitted.) *Lee v. Collins*, 249 Ga. App. 674, 676 (3) (547 SE2d 583) (2001). Viewed with all inferences in favor of the findings of the trial court sitting as factfinder, the evidence here was that, in early June 1998, S & S operated a controlled atmosphere storage facility in which it stored onions for Williamson as well as onions from other growers. According to Robert Smith, an owner of S & S, Williamson's onions (which Williamson had purchased from grower Lillard, "the Lillard onions") were stored first because Williamson said he would not need any onions until after July 1st. After S & S had stored the Lillard onions for a week or ten days, however, Williamson called on a Sunday afternoon and told Smith that he needed four loads of his jumbo onions shipped by 8:00 the next morning. Because Williamson's onions were stored behind other onions, including onions purchased by S & S from McLain ("the McLain onions"), it would have been impossible to get to the Lillard onions and load them by the next morning. According to Smith, Williamson said that if Smith would let him have the McLain onions, he would give Lillard onions of equal quality to Smith in exchange or he would pay the amount for which Smith had contracted to sell the McLain onions. Smith told Williamson that S & S had contracted to sell 4,022 bags of the McLain onions to Tom Laster in North Carolina for $20 per 40 pound box.

Laster testified that he had contracted with S & S to purchase about 4,000 boxes of onions at $20 per box. Laster had also agreed to be responsible for having the onions delivered to North Carolina and he was going to pack the onions with his employees in North Carolina. If Smith had had to arrange transportation of the onions to North Carolina, his expenses would have been $600 a load for four loads, a total of $2,400.

When S & S was preparing to ship the onions to Laster, the only onions available were the Lillard onions swapped by Williamson for the McLain onions. The majority of the Lillard onions were rotten, however, and not equal to those earlier supplied to Williamson. Smith was able to salvage and sell $2,000 worth of the Lillard onions to another buyer. Smith requested that Williamson pay the contract price for the Laster contract minus the transportation costs and the $2,000 from the other sale, a total of $76,040, but Williamson

refused. Williamson denied that he even owned the Lillard onions. He denied ever agreeing to swap onions with S & S and said no further conversations ever occurred regarding the proposed swap. In fact, Williamson said he did not even realize that S & S was claiming he owed money for the failed sale to Laster until S & S filed suit against him.

The trial court found that Williamson owed S & S $76,040 plus interest at the rate of seven percent beginning June 12, 1998.

1. In his first enumeration, Williamson argues that the trial court erred in presuming from his failure to respond that he "admitted the allegations in a letter dated August 19, 1998, pertaining to this transaction."

In its order, the trial court held that it was

> not persuaded by Williamson's blanket denial of the existence of the agreement or the placement of the underlying order for four loads of jumbo onions on a short deadline. *Williamson's assertion he was unaware of the existence of a dispute with S & S over the McLain Onions is rebutted by . . . a letter from Smith to Williamson dated August 19, 1998 raising the issue approximately six weeks [after receiving the onions].*

(Emphasis supplied.)

In that letter, Smith proposed a settlement between Williamson and S & S of all their dealings during the 1998 onion season. Included in that letter are the following statements by Smith:

> I have taken a significant loss on the McLain onions I *swapped* with you for the James Lillard onions. . . . The reason for the *swap* was to help you fill orders for jumbos at a critical time when nobody else would pack jumbos. . . . Billy [Williamson], I feel like I did you a big favor by *swapping the onions.*

(Emphasis supplied.)

Williamson introduced the letter, marked as D-1, at trial during his cross-examination of Smith and tendered the letter into evidence. While the trial court quoted OCGA § 24-4-23[2] in its order, the sentence following that quotation is that *"Williamson's lack of response*

---

[2] "In the ordinary course of business, when good faith requires an answer, it is the duty of the party receiving a letter from another to answer within a reasonable time. Otherwise he is presumed to admit the propriety of the acts mentioned in the letter of his correspondent and to adopt them."

4

to Smith's written inquiry regarding the matter of the 'swapped' onions *is noteworthy in connection with his now stated position that he was unaware that an exchange had taken place prior to litigation.*" (Emphasis supplied.)

Initially, we note that "[a] party will not be heard to complain of error induced by his own conduct, nor to complain of errors expressly invited by him." (Citation and punctuation omitted.) *Toberman v. Larose Ltd. Partnership*, 281 Ga. App. 775, 780 (2), n. 2 (637 SE2d 158) (2006). See also *Carnett's, Inc. v. Hammond*, 279 Ga. 125, 130 (6) (610 SE2d 529) (2005) ("A party cannot complain of [an] . . . order . . . that his own conduct produced or aided in causing.") (Punctuation and footnote omitted.) Because Williamson introduced the letter at trial, he cannot now complain of the trial court's consideration of it.

Also, as reflected by the wording of the trial court's order, it is apparent that he was considering the lack of response as impeaching of Williamson's trial testimony and not, as argued by Williamson, considering the lack of response as an admission by Williamson. Therefore, we need not decide if the lack of response to the letter constituted an admission pursuant to OCGA § 24-4-23.

2. Williamson contends that the trial court erred "in shifting the burden to [Williamson] to produce records of the transaction."

The trial court noted that Williamson's office manager testified that all of the records relating to business conducted by Williamson in Toombs County, including that with S & S, were boxed up and shipped to North Carolina at the end of each year. She also said that Williamson used only S & S for storage of onions in Toombs County in 1998. The trial court noted that Williamson testified that he had no records relating to the S & S storage facility and that "[i]t strains credulity to believe that no records existed for such an extensive set of business transactions." Citing OCGA § 24-4-1,[3] the trial court then concluded that either Williamson destroyed these records after learning of the conflict through the August 19, 1998 letter, or Williamson did not produce the records during discovery because they would have been favorable to S & S's claim.

Williamson misconstrues the trial court's order. It is not the agreement to swap onions that was at issue with regard to Williamson's records, since he denied that there had been any such agreement. Instead, the records could have shed light on Williamson's testimony that he had never owned the Lillard onions and, therefore,

---

[3] The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation is essential to a party's case or defense, the proof of such negation or negative affirmation lies on the party so affirming it.

would not have agreed to swap them. Williamson acknowledged that he kept records of all the onions he sold and that S & S had shipped all the Lillard onions back to Williamson when S & S was unable to sell them to Laster. Therefore, if Williamson's records showed he had sold some or all of the Lillard onions, that would have supported S & S's allegations and impeached Williamson's testimony.

Therefore, the trial court properly considered OCGA § 24-4-1, since Williamson avowed a negative, that he never owned the Lillard onions. See *Heard v. Lovett*, 273 Ga. 111, 112 (1) (538 SE2d 434) (2000).

3. Williamson argues that the trial court erred in "failing to construe [Smith's] conflicting sworn statements against him."

This argument merely attacks Smith's credibility and reargues what the evidence below proved. As set out above, however, in reviewing the fact findings of a trial court in a nonjury trial, this Court will not disturb them if there is any evidence to sustain them and this Court does not make credibility determinations. *Lee v. Collins*, 249 Ga. App. at 676 (3). Although Williamson may disagree with the credibility determinations made by the trial court, it cannot be said on the record before us that there is no evidence to support the trial court's conclusions.

4. Williamson also contests the weighing of evidence by the trial court, arguing that the trial court erred in calculating S & S's damages. There was evidence, however, to support both the figure claimed by S & S as to its lost income as well as to the proper amount to deduct from the gross income in order to calculate S & S's lost profits.

"Where[, as here,] the judgment of the trial court awards damages within the range of the conflicting testimony, this court will not reverse the judgment of the trial court on the ground the judgment was excessive." (Citations and punctuation omitted.) *Carlson v. Carlson*, 154 Ga. App. 839 (270 SE2d 65) (1980). See also *Choi v. Wan*, 207 Ga. App. 73, 74 (5) (427 SE2d 64) (1993). There was no error.

5. Williamson contends that the trial court erred in allowing evidence into the trial that Smith had no anticipated expenses in his sale to Laster.

Williamson failed to make such an objection in the court below, however, when Smith so testified. "Issues raised for the first time on appeal will not be considered by this court. Not only must the objection be timely raised in the trial court, but the trial judge must rule upon the same issue as raised upon appeal to preserve the issue for our consideration." (Citations and punctuation omitted.) *Byrd v. Shelley*, 279 Ga. App. 886, 887 (1) (633 SE2d 56) (2006).

6. Williamson argues that the trial court erred in awarding prejudgment interest because the damages were not liquidated.

"A claim is unliquidated when there is a bona fide contention as to the amount owing. A liquidated claim is an amount certain and fixed, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof." The word "liquidated" as used in OCGA § 7-4-15 means "settled, acknowledged, or agreed."

(Footnotes omitted.) *Holloway v. State Farm Fire &c. Co.*, 245 Ga. App. 319, 321 (1) (b) (537 SE2d 121) (2000).

Here, Smith and Laster provided evidence that there was an agreement for the sale of 4,022 boxes of onions at $20 per box. The only disputed issue was whether Williamson had agreed to cover the cost of this contract if he did not supply comparable onions to Smith in exchange for the McLain onions. "The fact that [Williamson] disputed liability at trial did not convert the claim into a claim for an uncertain and, therefore, unliquidated amount." (Footnote omitted.) *Holloway v. State Farm Fire &c. Co.*, 279 Ga. App. at 322 (1) (b).

Therefore, there was evidence of a liquidated sum upon which prejudgment interest could be computed.

7. After this case was docketed in this Court and Williamson had filed his brief, he filed a document titled "Supplemental Brief of Appellant" by which he sought to have this Court order recusal of the trial judge.

The trial court did not rule on this issue, and therefore, we cannot address it. "This court is for the correction of errors of law, and where the trial court has not ruled on an issue, we will not address it." (Punctuation and footnote omitted.) *CDP Event Svcs. v. Atcheson*, 289 Ga. App. 183, 187 (2) (656 SE2d 537) (2008).

*Judgment affirmed. Miller, C. J., and Blackburn, P. J., concur.*

DECIDED FEBRUARY 11, 2009.

*Malcolm F. Bryant, Jr.*, for appellants.
*Smith & Jenkins, Wilson R. Smith, Glen A. Cheney*, for appellee.