**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 14, 2022**

# In the Court of Appeals of Georgia

A21A1561. SUMMEROUR et al. v. CITY OF MONROE et al.

BARNES, Presiding Judge.

Mahlon Summerour, Jr. died shortly after being shot by a city police officer. A family member of the deceased brought this wrongful death action against the city and the officer. The trial court granted the defendants judgment on the pleadings on immunity grounds. For reasons explained below, that judgment is affirmed in part and vacated in part, and the case is remanded for proceedings not inconsistent with this opinion.

As the sole surviving child of the deceased, and as the personal representative of the estate, LaToya Summerour filed a complaint naming as defendants: (i) Sam Harrison, as the police officer who fired the shot; and (ii) the City of Monroe, as Harrison's employer at the time of the shooting (collectively, the Defendants). The

complaint sought damages on claims of battery and negligence. The factual allegations of the complaint included the following:

> At approximately 8:50 a.m. on October 19, 2018, Defendant Harrison and another City of Monroe police officer responded to a call about an oddly dressed "black or Hispanic" man walking down a street, holding what the caller believed to be either a BB gun or a shotgun in an unusual manner. Harrison and the other officer encountered the man, who turned out to be Mahlon Summerour, Jr., on foot near [a particular intersection] in the City of Monroe at approximately 9:00 a.m. He was wearing an orange shower curtain on his head and waiving a toy gun in the air. Harrison had dealt with Summerour on several occasions in the past and knew that he was mentally ill. Harrison approached Summerour and asked to see the gun, which was pointed straight up in the air and not toward anyone. Summerour said he was "making a movie," but that was clearly not the case. Harrison reached for the gun, but Summerour pulled it out of Harrison's reach and started to turn as if he were going to walk away. As Summerour was turning away from the officers, Harrison fired a single shot from his department-issued pistol which struck Summerour in the chest. Obviously bewildered, Summerour fell to the pavement, telling Harrison that the gun was not real as he writhed in pain and agony. In his subsequent statement to the GBI, Harrison repeatedly insisted that he thought the gun was real;[1] however, it should have been

---

[1] (Footnote in complaint.) For some reason, the GBI did not follow the usual investigative protocol of including any photographs of the alleged gun in the case file provided to the District Attorney and ultimately released under the Open Records Act, which suggests that the investigators did not want to cast any doubt on a fellow

obvious to any police officer familiar with firearms that Summerour was holding a crude homemade copy of a vintage Thompson submachine gun which would have been too heavy for Summerour to wave in the air so effortlessly had it been an actual "Tommy" gun.

(Paragraph numbers omitted.) The complaint further alleged that, even if the gun had been real, it was not being pointed at anyone nor otherwise being used in a threatening manner; that Harrison gave no warning before using deadly force; that the other officer at the scene neither fired his weapon, nor gave any command; and that after Summerour was transported to a hospital, he died about an hour of being shot.

Regarding immunity, the complaint alleged that Harrison was not entitled to official immunity to the extent that he violated ministerial duties imposed by policy and training or to the extent that he acted with actual malice. The complaint alleged that the City was not entitled to sovereign immunity to the extent of its liability insurance coverage.

The Defendants responded by filing contemporaneously an answer and two motions. In their answer, they admitted that Harrison was an employee of the City's

officer's claim that "it looked super real." There is also no indication from the District Attorney's file memorandum that she ever saw or asked to see a photograph of the "gun" before closing the case without further action.

police department acting within the scope of his employment at all relevant times, but denied liability. In their motion for judgment on the pleadings, the City's claim of immunity was based on language within an insurance policy; Harrison's claim of immunity was based on a recording of aspects of the police encounter as captured by the second officer's body camera. In their other motion, the Defendants requested that the court stay discovery until it ruled on their motion for judgment on the pleadings.

After a hearing, the trial court granted the Defendants' motion for judgment on the pleadings. In its order, the trial court expressly concluded that the insurance policy had not waived the City's sovereign immunity, and that the recording established that the officer was entitled to official immunity. LaToya Summerour (hereinafter "Summerour") challenges those rulings as follows.

1. *Sovereign immunity.*

Under Georgia law, municipal corporations are protected by sovereign immunity pursuant [to the Georgia Constitution's] Article IX, Section II, Paragraph IX, unless that immunity is waived by the General Assembly.[2] With particular regard to municipal corporations, our General Assembly has enacted OCGA § 36-33-1 which reiterates that "it is the public policy of the State of Georgia that there is no waiver of the

---

[2] See Ga. Const. of 1983, Art. IX, Sec. II, Para. IX ("The General Assembly may waive the immunity of counties, municipalities, and school districts by law.").

sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability from damages." OCGA § 36-33-1 (a).

(Citations omitted.) *City of Atlanta v. Mitcham*, 296 Ga. 576, 577 (1) (769 SE2d 320) (2015). However, OCGA § 36-33-1 (a) provides an exception relating to insurance coverage:

> A municipal corporation shall not waive its immunity by the purchase of liability insurance, . . . unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy.

OCGA § 36-33-1 (a). See *CSX Transp. v. City of Garden City*, 277 Ga. 248, 249 (1) (588 SE2d 688) (2003) ("In the context of tort liability, the legislature has authorized a narrow waiver of a municipality's sovereign immunity through the enactment of OCGA § 36-33-1 (a)[.]").

In the motion seeking judgment on the pleadings, the City argued that the policy at issue, which was attached to the answer, did not provide coverage for Summerour's claims. In particular, the City cited the policy language:

> For any amount for which the insured would not be liable under applicable governmental or sovereign immunity but for the existence of this policy; and *the issuance of this insurance shall not be deemed a*

5

*waiver of any statutory immunities by or on behalf of any insured*, nor of any statutory limits on the monetary amount of liability applicable to any insured were this policy not in effect; and as respects to any "claim", *we expressly reserve any and all rights to deny liability by reason of such immunity, and to assert the limitations as to the amount of liability as might be provided by law*.

(Emphasis added in Defendants' appellate brief.) In support of such argument, the City relied on principles underlying cases such as *Dugger v. Sprouse*, 257 Ga. 778, 779 (364 SE2d 275) (1988) ("[W]here the plain terms of the policy provide that there is no coverage for the particular claim, the policy does not create a waiver of sovereign immunity as to that claim."), and *Gatto v. City of Stateboro*, 353 Ga. App. 178, 183-184 (2) (834 SE2d 623) (2019) (finding no waiver of sovereign immunity where the city's insurance policy included language: "We have no duty to pay damages on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you. . . . This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments"), affirmed on other grounds, 312 Ga. 164

6

(860 SE2d 713) (2021) (addressing whether the city's conduct fell within a so-called "nuisance exception" to sovereign immunity).

Without elaboration, the trial court concluded in its order that "the language in the City's of Monroe's Insurance Plan makes clear that Sovereign Immunity is not waived[.]" Summerour contests that ruling on two grounds.

(a) First, Summerour challenges the ruling on procedural grounds. She contends that it was improper for the trial court to decide the issue – whether the insurance policy waived the City's sovereign immunity – on motion for judgment on the pleadings. Summerour argues that the insurance policy constitutes materials outside the "four corners of the Complaint," and that the trial court's consideration of the policy thus required the court to first convert the Defendants' motion into one for summary judgment and then allow her time to conduct discovery so as to fully develop the record. See generally OCGA § 9-11-12 (c).

This challenge is unavailing, given the stance taken by Summerour in the trial court. At the motion hearing, when focusing on whether the City's sovereign immunity was waived by its purchase of insurance, Summerour's counsel stated to the trial court, "[Y]ou can consider the insurance policy and whether that policy waives the City's sovereign immunity." Counsel acknowledged that this Court's

7

decision in *Gatto*, 353 Ga. App. 178, was adverse to Summerour and that the trial court was bound by that decision, but pointed out that when the Supreme Court of Georgia granted certiorari in that case, that Court did not address the insurance question. Given that procedural background, Summerour's counsel posed to the trial court, "[M]y suggestion would be that you grant summary judgment on the sovereign immunity issue only, and the reason I say that is because under 9-11-56 any grant of summary judgment is directly appealable[.] . . . Let it go on up on that issue on a direct appeal, and that appeal would not stop the rest of the case[.]" As counsel recapped later at the hearing, he was thus asking the trial court for a ruling "[s]olely on the insurance waiver issue." Seeking clarification, the trial court posed, "[S]o you are saying, well, for that I wouldn't need any discovery purposes." Counsel affirmed,

> That's correct, and the reason is that the only relevant evidence on that issue is the policy itself, because we did plead in our complaint that the policy waives sovereign immunity. . . . So if you approach it that way, . . . there is no additional discovery needed to determine whether the language of this insurance policy waives immunity as a matter of law or not. The policy is all you need for that.

Pretermitting the viability of Summerour's underlying premise (that the insurance policy constituted materials outside the "four corners of the Complaint" and

8

that consideration thereof was thus impermissible for purposes of a motion for judgment on the pleadings),[3] we conclude that the procedural challenge now advanced by Summerour was affirmatively waived. See *Sims v. First Acceptance Ins. Co. of Ga.*, 322 Ga. App. 361, 364 (3) (a) (745 SE2d 306) (2013) (rejecting appellant's contention that the trial court erred by converting the motion for judgment on the pleadings to a motion for summary judgment without giving requisite notice, where "[appellant] acquiesced in the trial court's consideration of evidence in support of the motion for judgment on the pleadings, and, in effect, requested that the motion be converted into one for summary judgment by . . . urging the trial court to consider this evidence") (citation and punctuation omitted); see also *Hammond v. Hammond*, 290 Ga. 518, 519 (1) (722 SE2d 729) (2012) ("[A] party will not be heard to complain of error induced by [her] own conduct, nor of error expressly invited during the course of trial."); *Alexandrov v. Alexandrov*, 289 Ga. 126, 127 (2) (709 SE2d 778) (2011) (expounding that a party cannot ignore at the trial court level that which he or

---

[3] However, see, e.g., *Sharma v. City of Alpharetta*, 361 Ga. App. 692, 695-697 (865 SE2d 287) (2021) (upholding the dismissal of the complaint against a city, where the city's purchase of an insurance policy did not amount to a waiver of sovereign immunity); *McCobb v. Clayton County*, 309 Ga. App. 217, 218 (1) (a) (710 SE2d 207) (2011) (reaching the substantive merits of a judgment on the pleadings premised on an insurance policy, where it was "undisputed that the county purchased liability insurance, and the policy is in the record").

she thinks to be error, take a chance on a favorable outcome, and complain later); *Williamson v. Strickland & Smith*, 296 Ga. App. 1, 4 (1) (673 SE2d 858) (2009) ("[A] party will not be heard to complain of error induced by his own conduct, nor to complain of errors expressly invited by him.") (citation and punctuation omitted).

(b) Summerour challenges the trial court's ruling on the substantive ground that the policy language relied upon purports to provide *no* coverage for *anything* that otherwise would be shielded by sovereign immunity, and thus amounts to impermissible "illusory language that circumvents the Legislature's waiver of sovereign immunity."[4]

As Summerour's counsel acknowledged when arguing this ground below, the issue is controlled adversely to Summerour by our decision in *Gatto*, 353 Ga. App. at 184 (2) (rejecting argument that "the language of the policy effectively usurps the General Assembly's legislative waiver, and allows the City to contract around the waiver"). And since that hearing, our Supreme Court has expressly approved our

---

[4] Notably, Summerour has made no assertion that the language of the policy provides coverage for any tort alleged in the complaint; nor has she asserted that the cited policy language is ambiguous. See generally *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996) ("Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms.").

10

*Gatto* decision. See *Atlantic Specialty Ins. Co. v. City of College Park*, __ Ga. __, ___ (4) (__ SE2d __) (2022 Ga. LEXIS 22) (2022 WL 451879) (Case S21G0482, decided February 15, 2022). Thus, Summerour's substantive challenge lacks merit. See *Gatto*, 353 Ga. App. at 184 (2) (upholding grant of summary judgment to the municipality "because the insurance policy does not cover [the plaintiff's] claims here, [and thus] there is no legislative waiver of sovereign immunity"), cited with approval in *Atlantic Specialty Ins. Co.*, __ Ga. at __ (4). See also *Sharma v. City of Alpharetta*, 361 Ga. App. 692, 694 (865 SE2d 287) (2021) (explaining that in determining whether an insurance policy waives sovereign immunity pursuant to OCGA § 36-33-1 (a), "[c]ourts are to specifically analyze the language of an insurance policy at issue to determine whether it actually provides coverage for a plaintiff's claims for damages") (citation and punctuation omitted).

2. *Official immunity*. "The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority." (Citation and punctuation omitted.) *Owens v. City of Greenville*, 290 Ga. 557, 560-561 (3) (b) (722 SE2d 755) (2012).

11

In pursuing judgment on the pleadings, Harrison claimed entitlement to official immunity, relying on *Kidd v. Coates*, 271 Ga. 33, 34 (518 SE2d 124) (1999), for the principle that "an injurious work-related act committed by an officer, but justified by self-defense, comes within the scope of official immunity." Additionally, Harrison relied on *McNeil v. Parker*, 169 Ga. App. 756, 756 (315 SE2d 270) (1984), for the principle that "[OCGA § 16-3-21 (a)] supplies the basis of justification that a person who has committed a battery may assert as a defense in a civil suit over the battery." OCGA § 16-3-21 (a) provides,

> A person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to defend himself or herself or a third person against such other's imminent use of unlawful force; however, except as provided in Code Section 16-3-23,[5] a person is justified in using force which is intended or likely to cause death or great bodily harm only if he or she reasonably believes that such force is necessary to prevent death or great bodily injury to himself or herself or a third person or to prevent the commission of a forcible felony.

---

[5] OCGA § 16-3-23 (pertaining to the use of force in defense of habitation).

12

As *McNeil* further explained, "[s]uch questions of reasonable belief, necessary or unnecessary force, initial aggression, and retreat are ordinarily issues of fact reserved for jury resolution." *McNeil*, 169 Ga. App. at 756-757.

In the motion, Harrison contended that the recording at issue established that he reasonably believed that the fake gun was real, that he reasonably perceived imminent use of unlawful force, that he acted in a manner that was necessary to defend himself and third persons, that his deployment of lethal force was thus justified, that he was entitled to official immunity, and that Summerour's claims against him failed as a matter of law. At the hearing on the motion, defense counsel pressed that the recording established that the officer was entitled to official immunity. Defense counsel acknowledged that "the plaintiff wants to move forward with discovery," but expressed, "I can't see how any discovery will serve to overcome the video." Counsel asserted that "when considering this video it's very clear. He acts in self-defense." Counsel thus requested the court to "make that determination based on the video evidence." See generally S*pann v. Davis*, 312 Ga. 843, 847 (1) (866 SE2d 371) (2021) ("[A]s is generally the case for those asserting an affirmative defense, a party seeking protection from suit on the basis of immunity bears the burden of establishing that he or she is entitled to that protection."). And as noted

13

above, the trial court ruled that Harrison was entitled to official immunity, revealing in its order that such ruling was based upon the court's viewing of the recording.

On appeal, Summerour contends that the grant of judgment on the pleadings was impermissibly based on factual determinations that the trial court derived from the recording, which recording Summerour maintains is properly construed as a matter outside the pleadings. Summerour argues that when the court discerned facts from such recording, the court converted the Defendants' motion into one for summary judgment. Summerour asserts that the court's ruling was therefore erroneous, as made without providing her requisite notice and a reasonable opportunity to present evidence in opposition. We agree.

OCGA § 9-11-12 (c), which authorizes a judgment on the pleadings and which further contains a clause for converting the underlying motion into one for summary judgment, states,

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Code Section 9-11-56, and all parties shall be given reasonable opportunity to

14

present all material made pertinent to such a motion by Code Section 9-11-56.

The Defendants counter that the recording was not outside the pleadings, pointing out that they specifically attached the recording to their *answer*. See *Capital Floors v. Furman*, 351 Ga. App. 589, 594 (2), n.4 (831 SE2d 522) (2019) (noting that "pleadings" includes a complaint and an answer, and citing OCGA § 9-11-7 (a)). We are careful, however, not to elevate form over substance – by accepting a defendant's exhibit as not "outside the pleadings" merely because it was attached to the answer. Otherwise, the conversion clause of OCGA § 9-11-12 (c) would be too easily circumvented at the pleadings stage.

> [Where, as here,] the parties moving for judgment on the pleadings do not introduce affidavits, depositions, or interrogatories in support of their motion [for judgment on the pleadings], such motion is the equivalent of a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. The motion to dismiss should not be granted unless the averments in the complaint disclose with certainty that the plaintiffs would not be entitled to relief under any state of facts which could be proved in support of their claim.

(Citation and punctuation omitted.) *Southwest Health & Wellness v. Work*, 282 Ga. App. 619, 623 (2) (639 SE2d 570) (2006).

15

We are mindful that in *Murrey v. Specialty Underwriters*, 233 Ga. 804 (213 SE2d 668) (1975), our Supreme Court explained that some "affirmative defenses may properly be raised by a motion to dismiss if the facts are admitted or are not controverted or are completely disclosed on the face of the pleadings *and nothing further can be developed by a trial of the issue*." (Emphasis supplied.) Id. at 807-808, cited in *Spann*, 312 Ga. at 846 (1). But here, Summerour vehemently contested the Defendants' claim that the recording constituted the sole and complete evidence of the police encounter, which thus extinguished any basis for discovery. And it cannot fairly be concluded at this early stage of the litigation that nothing further can be developed on the issue whether Harrison is entitled to official immunity as asserted. See *Austin v. Clark*, 294 Ga. 773, 775 (755 SE2d 796) (2014) (reversing dismissal of complaint that was based on official immunity grounds, because "discovery . . . has been extremely limited" and because "it cannot be said that the allegations of the complaint disclose with certainty that [the plaintiff] would not be entitled to relief under *any* state of provable facts asserted in support"; positing that "there conceivably could be evidence of some explicit detailed laundry list of discrete tasks each individual defendant was required to perform"; instructing that "[a]t this stage in the litigation, it does not matter that the existence of such a laundry list is

16

unlikely"; and that it "does not matter that [the plaintiff] has pointed to no specific and clear procedures or methods for dealing with the purported hazard" because "[t]his is factual evidence which may or may not be developed during discovery and can be considered on a subsequent motion for summary judgment") (emphasis in original); see also *Collins v. Athens Orthopedic Clinic, P.A*., 307 Ga. 555, 560 (2) (a) (837 SE2d 310) (2019) (reiterating that "[i]n deciding . . . a motion [to dismiss], any doubts regarding the complaint must be construed in favor of the plaintiff").

At the hearing on the Defendants' motion, Summerour's counsel argued that consideration of the recording for purposes urged by the Defendants "converts [the Defendants' motion] into a motion for summary judgment, which in our view can't be decided based on one piece of evidence considered in isolation without giving both sides an opportunity" to conduct discovery, to challenge the Defendants' evidence, to discover additional evidence, and to give the trial court a complete record on which to rule. After confirming with Summerour's counsel that the news media may have gained access to some portion of the recording, the trial judge revealed, "I have already seen the whole film up to the actual shooting itself . . . . I don't know what the plaintiffs would be arguing as to why this would not be a justified shooting from what I have already observed just on this video." Plaintiffs'

17

counsel responded, "We have different interpretations of the same video," while maintaining that the recording is not properly a part of the pleadings and that consideration thereof for purposes of a motion for judgment on the pleadings was impermissible. When pressed to finish his argument, Summerour's counsel described an expert they had retained to examine the recording – the expert had been involved in law enforcement for decades; the expert had conducted officer training; and the expert was knowledgeable about firearms and the extent to which a gun could be recognized as real or fake. Summerour's counsel went on to outline that discovery would be used, among other things, to ascertain officer training with respect to de-escalation techniques and dealing with individuals known to have mental illnesses and/or who are non-compliant – i.e., whether to "approach [a pedestrian who is holding a gun] and cover . . . crouch behind your car window" or whether to "walk up and try to shake the guy's hand and then shoot him. We don't even know if [the officer] shot him on purpose. For all we know it was an accidental shooting. . . . We haven't had a chance to ask the [defendant officer] his view of what happened. All we know is what a video of another officer, who didn't see the need to shoot, saw." Accordingly, as Summerour's summarizes in her appellate brief, she (through her counsel) never "consent[ed] to the consideration of a video from the standpoint of one

18

officer – who himself did not see the need to use deadly force – to the exclusion of all other evidence." Thus, while mindful of *Murray*, 233 Ga. at 807-808, we conclude that it did not authorize consideration of the recording at issue here on motion for judgment on the pleadings.

The Defendants contend that OCGA § 9-11-10 (c) should extend to the recording in this case. That Code provision states, "A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." The Defendants have made no showing that the recording constituted a "written instrument" that is properly "incorporated into the pleadings [and] considered when deciding a motion to dismiss for failure to state a claim without converting the motion into one for summary judgment." *Stendahl v. Cobb County*, 284 Ga. 525, 526 (1), n. 2 (668 SE2d 723) (2008). The Defendants assert that under *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85 (764 SE2d 398) (2014), "there can be no doubt that [the] trial court was permitted to consider the videotape footage . . . attached to Defendants' answer." But their reliance on *Trop, Inc.* is misplaced because the exhibits there are inapposite to the recording as proffered here. In *Trop, Inc.*, a city located in DeKalb County was sued by operators of an adult entertainment club. Id. at 86. The operators claimed that the city's newly-enacted sexually-oriented business Code that restricted alcohol

19

consumption and other activities inside the club was unconstitutional, and further that their business was exempt from the Code based on their agreement with the county. Id. Affirming the grant of judgment on the pleadings to the defendant-city, the Supreme Court rejected the operators' contention that the trial court's consideration of exhibits attached to the city's answer converted the underlying motion into one for summary judgment. Id. at 89 (2). Pertinent here, the Supreme Court specifically identified "[t]he items considered by the trial court, namely the sexually-oriented business Code and amendment, the Alcohol Code and amendment, the Zoning Code, the City's charter, and DeKalb County's enabling legislation." Id.

Given the foregoing, we conclude that the Defendants' recording amounted to evidentiary material that the trial court was not authorized to consider without first converting the Defendants' motion to one for summary judgment, giving full and fair notice thereof, and complying with its procedural requirements.[6] As detailed above,

---

[6] See generally *BAC Home Loans Servicing v. Wedereit*, 297 Ga. 313, 314 (773 SE2d 711) (2015) ("[T]he sua sponte grant of summary judgment must be proper in all . . . respects, which means that in addition to ensuring the record supports such a judgment, the trial court must ensure that the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment.") (citation and punctuation omitted). Accord Aimee Brown, *Comment, Pleading in Technicolor: When Can Litigants Incorporate Audiovisual Works Into Their Complaints?*, 80 U. Chi. L. Rev. 1269, 1282 (III) (2013) (arguing that "when audiovisual works evidence legal rights or duties, they should be

20

Summerour (through counsel) hotly disputed the Defendants' proffer of the recording as the sole and complete evidence of her claims' viability. And given the record before us,[7] we conclude that the trial court's judgment on the pleadings, as it pertained to Harrison, was erroneous and is thus vacated; we remand this case for proceedings not inconsistent with this opinion. See *Islam v. Wells Fargo Bank, N.A.*, 327 Ga. App. 197, 201 (1) (757 SE2d 663) (2014) (explaining that where the trial court improperly considered documents outside the pleadings, as well as arguments that attacked the credibility of the plaintiff's allegation and disputed the factual basis for such allegations, the trial court converted the motion to dismiss into a motion for

---

considered written instruments for purposes of [Federal Rule of Civil Procedure 10 (c)]. Thus, whether an audiovisual work may be attached to a pleading depends on whether it evidences legal rights or merely has evidentiary value. If it is the former, then the work may be attached, whereas if it is the latter, attachment should not be permissible."); 5C Charles A. Wright et al., Fed. Prac. & Proc. Civ. § 1371, Conversion of Rule 12 (c) Motion into Summary Judgment Motion (discussing the consideration of exhibits attached to the answer but neither referenced in nor attached to the complaint).

[7] See *Norman v. Xytex Corp.*, 310 Ga. 127, 138 (2) (e) (848 SE2d 835) (2020) (reciting that "[a] complaint need only give fair notice of the claim," and noting further that "[u]nder this 'notice' theory of pleading, it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain") (citation and punctuation omitted).

summary judgment without complying with the procedural requirements for considering a summary judgment motion).

3. We note that the Defendants seek affirmance on other grounds. They assert that Summerour's claims are barred by estoppel principles. However, the trial court did not base its conclusions thereon, so we do not address that issue now. The Defendants also recite that "a defendant asserting an immunity defense may move to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1)."[8] Again, the trial court did not base its conclusions thereon, so we do not address that issue now. The Defendants sought judgment on the pleadings with express reliance upon OCGA § 9-11-12 (c). And as confirmed by the face of the order challenged in this appeal, the trial court "GRANT[ED] the Defendants' Motion for Judgment on the Pleadings," citing OCGA § 9-11-12 (c), noting law pertaining to that provision's conversion clause, and revealing that it had "considered [the recording] as part of the pleadings." Given the foregoing, we do not reach the extent to which OCGA § 9-11-

---

[8] See generally *Rivera v. Washington*, 298 Ga. 770, 778 (784 SE2d 775) (2016) ("[A] defendant asserting an immunity defense may move to dismiss for lack of subject matter jurisdiction under OCGA § 9-11-12 (b) (1), on consideration of which, the trial court may hear evidence and make relevant factual findings to decide the threshold issue.").

22

12 (b) (1) provides a means for foreclosing a non-movant's opportunity for discovery. See generally *City of Gainesville v. Dodd*, 275 Ga. 834, 838-839 (573 SE2d 369) (2002) (holding that appellate courts retain discretion in determining whether to apply the right-for-any-reason rule and consider alternative legal theories not addressed by the trial court, or to vacate order and remand for the trial court to consider alternative legal theories in the first instance).

*Judgment affirmed in part and vacated in part, and case remanded. Gobeil and Markle, JJ., concur.*